FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N Y

★ SEP 19 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ABDOU THIOR,

                Plaintiff,

- v. -

JETBLUE AIRWAYS, INC.,

                Defendant.

------------------------------------------------------------x

**OPINION & ORDER**

13-cv-6211 (NG) (SMG)

**GERSHON, United States District Judge:**

Plaintiff Abdou Thior brings this action against JetBlue Airways, Inc. for discrimination based on race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as New York Executive Law § 296 ("NYSHRL") and New York City Human Rights Law, N.Y. Admin. Code § 8-107 ("NYCHRL"). Plaintiff filed his initial complaint on November 8, 2013 ("Complaint"). In the Complaint, plaintiff alleged that he was discriminated against when he received a failing mark at a training program, which temporarily disqualified him from being eligible for a promotion.

On May 18, 2015, he moved to amend his complaint ("Proposed Amended Complaint" or "PAC") to include the following claims: (1) a pattern or practice of discrimination; (2) hostile work environment; and (3) retaliation. As to each new claim, plaintiff alleges that defendant's conduct violates Title VII, NYSHRL, and NYCHRL. In opposing the amendment, JetBlue argues that plaintiff engaged in undue delay and bad faith in seeking the amendment, and, in any event, the claims asserted in the Proposed Amended Complaint are futile. For the reasons set forth below, I deny plaintiff's motion to amend on the ground of futility.

## I. Background

### A. Facts

The following facts are taken from plaintiff's Proposed Amended Complaint, and I accept them as true for purposes of this motion. Plaintiff, a man of Senegal ethnicity who describes himself as "black," began working at JetBlue in 2007 as a pilot, initially as a "first officer" and later as a captain after his February 2014 promotion (approximately three months after initiating this lawsuit). According to plaintiff, 1.5% of JetBlue's pilots are black. PAC at ¶¶ 8, 10. It is JetBlue's practice to require each pilot to pass an annual, three-day course known as the "Recurrent Program" (the "Program"). PAC at ¶ 14. Plaintiff has successfully completed every such Program during the duration of his employment at JetBlue except for one, which is the basis for this lawsuit.[1] PAC at ¶ 15.

In January of 2011, plaintiff attended a Program at which his training partner was James Hughes and his supervisor was James Olenik, both described by plaintiff as caucasian males. PAC at ¶¶ 20, 21, 26. Shortly before this time, on December 12, 2010, plaintiff had placed a bid for a promotion to captain. PAC at ¶ 17. When plaintiff arrived at the Program, Olenik asked him if he was eligible for a promotion to captain. PAC at ¶ 23. Plaintiff informed him that he was and that he had bid on a position a few weeks earlier. PAC at ¶ 24. In the airline industry, promotions are administered based on seniority. PAC at ¶ 16. Accordingly, to receive a promotion you have to bid on positions at various airports, and seniority will determine who receives the position.

---

[1] Plaintiff makes fleeting remarks regarding an "unsatisfactory mark" he received at a training program in 2007. PAC at ¶¶ 45, 48, 57. Plaintiff does not provide any factual detail whatsoever regarding this training. Instead, in a conclusory fashion, plaintiff states that this mark was the result of "discrimination by JetBlue's supervisors." PAC at ¶ 57. Given the lack of factual support for this conclusion, it cannot buttress plaintiff's claim that he was discriminated against in 2011.

2

Plaintiff alleges that, at this Program, Olenik discriminated against him. The discriminatory acts included: (1) mocking his accent (which Hughes also did); (2) diverting from the standardized Federal Aviation Administration ("FAA") approved syllabus during the Program in ways that were detrimental to plaintiff; and (3) giving him a failing mark despite plaintiff having performed competently. PAC at ¶¶ 26-32. While failing plaintiff for his "hesitation," Olenik gave Hughes a passing mark despite Hughes having made multiple mistakes. PAC at ¶¶ 28, 31-32. As a result of his failing mark, plaintiff had to attend a remedial course, which prevented him from bidding on station transfers or receiving promotional opportunities. PAC at ¶¶ 24, 43-44.

After the Program, plaintiff informed JetBlue's "Professional Standards Committee" of his experience. It sent his case to the Human Resources Department for investigation, which ultimately did not find any discriminatory behavior. PAC at ¶¶ 36-37. On March 1, 2012, plaintiff filed a complaint with the Equal Employment Opportunities Commission ("EEOC"), and he received a right to sue letter on August 13, 2013. PAC at ¶¶ 46-47. In February of 2014, plaintiff was promoted to captain. PAC at ¶ 8. Shortly thereafter, on March 10, 2014, JetBlue gave him an unsatisfactory mark on his "Captain FAA observation check training," which plaintiff maintains was in retaliation for his filing an EEOC complaint and initiating this lawsuit. PAC at ¶ 63.

## II. Discussion

### A. Legal Standard

Courts "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). A request to amend should be denied only in the face of undue delay, bad faith, undue prejudice, or futility of the amendment. *Gomez v. City of New York*, 2016 WL 3093982, at *2 (S.D.N.Y. May 31, 2016). An amendment would be futile if it would not "withstand a motion to dismiss." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d

3

Cir. 2007). This standard requires that the proposed amendment plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether an amendment is futile, the court must accept plaintiff's factual allegations as true, and the party opposing the amendment bears the burden of demonstrating its futility. *Vargas v. Davies*, 2016 WL 3044850, at *3 (S.D.N.Y. May 27, 2016).

When evaluating a motion to amend, a court does not engage in "a summary judgment exercise." *Joinnides v. Floral Park-Bellerose Union School Dist.*, 2015 WL 1476422, at *16 (E.D.N.Y. Mar. 31, 2015); *see Quintanilla v. Suffolk Paving Corp.*, 2012 WL 4086805, at *6 (E.D.N.Y. Sept. 12, 2012). Rather, the court's analysis is limited to what it could consider on a motion to dismiss—namely the allegations in the complaint, documents incorporated by reference in the complaint, and documents on which plaintiff relied in bringing suit. *See Franzone v. City of New York*, 2015 WL 2139121, at *1 n.2 (E.D.N.Y. May 4, 2015). Accordingly, though both parties submitted exhibits with their papers that contained information acquired in discovery (including documents and deposition transcripts), I did not consider these submissions.

B. **Pattern or Practice Claim**

Plaintiff first seeks to add a pattern or practice discrimination claim. However, such a claim is not cognizable on an individual basis, but rather must be asserted by a class of plaintiffs. *See Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012). Accordingly, plaintiff's claims brought pursuant to Title VII, NYSHRL, and NYCHRL alleging pattern or practice discrimination are not viable and amending the Complaint to add them would be futile. *See Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 506, 511 (S.D.N.Y. 2013).

Moreover, even if plaintiff could bring this claim individually, his allegations are insufficient to draw an inference that JetBlue engaged in a pattern or practice of discrimination. A

pattern or practice claim requires that the alleged discrimination "was the company's standard operating procedure, the regular rather than the unusual practice, and that the discrimination was directed at a class of victims." *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013) (internal quotation omitted).

Here, plaintiff's Proposed Amended Complaint does not plausibly allege that discrimination was JetBlue's standard operating procedure or that the alleged discrimination affected anyone but himself. Taking the facts alleged in the Proposed Amended Complaint as true, all of the alleged discriminatory acts were connected to one discrete occasion directed only against plaintiff—the events that occurred at the Program in January of 2011. Specifically: (1) Olenik and Hughes mocked plaintiff's accent; (2) Olenik treated plaintiff unfairly during the Program; and (3) Olenik gave plaintiff an undeserved failing mark.

In an attempt to allege the pervasive discrimination necessary to bring a pattern or practice claim, plaintiff relies on statistical evidence—specifically that 1.5% of JetBlue's pilots are black. Based on this statistic, plaintiff argues that "JetBlue also knew or should have known that its business practices—including but not limited to employing not more than 1.5 percent of black pilots system wide promoted discrimination and could not help but have encouraged discriminatory decisions regarding promotion, discipline, demotion, evaluation, compensation, and evaluation of human rights complaints." PAC at ¶ 54. However, plaintiff's reliance on this statistic is problematic for multiple reasons. First, plaintiff arrives at his 1.5% figure by extrapolating from a small population size with no basis to believe that this sample is representative of the population as a whole.[2] Second, this statistic focuses on the wrong dataset. "When offering

---

[2] Plaintiff arrives at the conclusion that 1.5% of JetBlue pilots are black through the following method; according to plaintiff, each instructor (including Olenik) is randomly assigned trainees. PAC at ¶ 50. Out of a total of 146 pilots that Olenik trained from September 27, 2010

5

statistics, 'plaintiff must identify the correct population for analysis.'" *Nunez v. Cuomo*, 2012 WL 3241260, at *10 (E.D.N.Y. Aug. 7, 2012) (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 368 (2d Cir. 1999)). The basis for plaintiff's lawsuit is that he was discriminated against when JetBlue failed to promote him to captain. Plaintiff's complaint is not that JetBlue failed to hire him as a pilot. To the contrary, plaintiff was hired as a pilot, but then, according to plaintiff, he was not promoted to captain when he should have been. Thus, his statistical evidence that only 1.5% of JetBlue pilots are black does not speak to the discrimination directed at plaintiff—his failure to receive a promotion. Lastly, it is impossible to infer based solely on raw percentages that a small number of black pilots amounts to a pattern or practice of discrimination. *See Lomotey v. CT Dep't of Transp.*, 355 Fed. Appx. 478, 481 (2d Cir. 2009) ("[Plaintiff's] evidence that only Caucasians were selected for [job] placements amounts to nothing more than raw numbers which, without further information on key considerations such as the racial composition of the qualified labor pool, cannot support an inference of discrimination.").

Therefore, even if plaintiff could bring a pattern or practice claim individually (which he cannot), his allegations are insufficient for such a claim and amendment would be futile.

### C. Hostile Work Environment

To state a claim for a hostile work environment in violation of Title VII and NYSHRL, a plaintiff must plausibly allege that the "complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3)

---

to February 27, 2011, 1.36% of them were black (which plaintiff seemingly rounds up to 1.5%). PAC at ¶ 22. Though I accept plaintiff's statistical allegations as true for purposes of this motion, plaintiff provides no support for the proposition that Olenik's trainees during this five-month period are representative of JetBlue's pilots as a whole.

creates such an environment because of the plaintiff's [protected characteristic]."³ *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *see Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 Fed. Appx. 9, 12 (2d Cir. 2013). In evaluating this claim, the court must consider the totality of the circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with the plaintiff's work performance." *Id.* (internal quotation omitted).

Hostile work environment claims tend to involve personal attacks and harassing comments directed at plaintiff. *See Parekh v. Swissport Cargo Servs., Inc.*, 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 315 (E.D.N.Y. 2012). Other adverse employment actions, such as failure to promote or termination, though forms of discrimination that are actionable in other ways, do not give rise to a hostile work environment claim without an allegation that they created hostility in the workplace. Otherwise, any retaliation or discrimination claim would also give rise to a hostile work environment claim.

Here, the only personal attack or harassing comment plaintiff alleges in his Proposed Amended Complaint is the mocking of his accent that occurred at the Program in January of 2011. This one isolated incident is insufficient to rise to the level of a hostile work environment. *See, e.g., Dotel v. Walmart Stores, Inc.*, 627 Fed. Appx. 42, 43 (2d Cir. 2016) (lone statement that "women are good for nothing" insufficient to constitute hostile work environment); *Jones v. AMR Am. Airlines, Inc.*, 2016 WL 3248309, at *4-5 (E.D.N.Y. June 10, 2016) (one racial slur insufficient to constitute hostile work environment); *Nassry v. St. Luke's Roosevelt Hosp.*, 2016

---

³ The same standard applies to hostile work environment claims under Title VII and NYSHRL. *See Tolbert v. Smith*, 790 F.3d 427, 438-39 (2d Cir. 2015).

WL 1274576, at *9 (S.D.N.Y. Mar. 31, 2016) (three or four remarks insufficient to constitute hostile work environment); *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 679-80 (S.D.N.Y. 2011) (rejecting hostile work environment claim as insufficiently continuous or pervasive where boss laughed at employee's accent).

Finally, plaintiff offers no support for the proposition that a lack of diversity in the workplace can give rise to a hostile work environment claim. Simply put, the allegation that only 1.5% of JetBlue's pilots are black does not, on its own, create a hostile work environment.[4]

Therefore, allowing plaintiff to amend his Complaint to add a hostile work environment claim under Title VII and NYSHRL would be futile.

Even under the broader NYCHRL standard, plaintiff fails to state a hostile work environment claim. *See Rubin v. Abbott Labs.*, 2015 WL 5679644, at *12 (S.D.N.Y. Sept. 23, 2015). Pursuant to this City law, the inquiry is whether plaintiff "has been treated less well than other employees because of [his protected characteristic]." *Id.* at *13 (quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009)). Though broader than its federal and state analogs, the NYCHRL is "still not a general civility code and petty slights and trivial inconveniences are not actionable." *Id.*

In his Proposed Amended Complaint, the only personal attack or harassing comment plaintiff alleges to supports his hostile work environment claim is that Olenik and Hughes mocked his accent at the Program in January of 2011. Plaintiff has worked at JetBlue since 2007. This one identified occurrence in the Proposed Amended Complaint over a nine year period is insufficient to support a hostile work environment claim even under the lower threshold of the

---

[4] As I discuss above, I accept plaintiff's statistic as true for purposes of this motion despite the numerous flaws with his methodology. *See supra* at 5-6.

NYCHRL. *See, e.g., Russo*, 972 F. Supp. 2d at 452-53; *Sosa v. Medstaff, Inc.*, 2014 WL 4377754, at *5 (S.D.N.Y. Sept. 4, 2014) (dismissing claim under NYCHRL where employer told employee "You're so street").

Accordingly, plaintiff's proposed amendment to add a hostile work environment claim under NYCHRL would be futile.

### D. Retaliation

Lastly, plaintiff seeks to add a retaliation claim. Plaintiff alleges that JetBlue retaliated against him by "giving him an unsatisfactory mark on his A320 Captain FAA observation check training on March 10, 2014." PAC at ¶ 63. According to plaintiff, this poor mark was in retaliation for his complaining internally about the discrimination that occurred in 2011, filing a charge with the EEOC in 2012, and filing the Complaint in this case in November of 2013. *Id.*

"For a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 89-90 (2d Cir. 2015). In the context of a Title VII retaliation claim, an adverse employment action is any action that "'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). As to causation under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."[5] *Id. See Vasquez v. Empress Ambulance Serv., Inc.*, 2016 WL 4501673, at *4 n.4 (2d Cir. 2016). Though NYCHRL is

---

[5] The Second Circuit has not yet decided whether the but-for standard of causation also applies to NYSHRL claims. *See Kleehammer v. Monroe Cnty.*, 583 Fed. Appx. 18, 21 (2d Cir. 2014); *see also Edwards v. Khalil*, 2016 WL 1312149, at *29 (S.D.N.Y. Mar. 31, 2016).

otherwise broader than its federal and state counterparts, it too has a causation requirement. *See Melman v. Montefiore Med. Center*, 98 A.D.3d 107, 130-31 (1st Dept. 2012); *Whitley v. Montefiore Med. Grp.*, 2016 WL 1267788, at *11 (S.D.N.Y. Mar. 30, 2016).

Plaintiff's Proposed Amended Complaint does not set forth a viable retaliation claim because he does not allege facts which plausibly support a causal connection, let alone the but-for causation required by federal law, between the protected activity and the adverse employment action. There are two ways to allege such a causal connection—either directly through evidence of retaliatory animus or indirectly by showing that the protected activity was followed closely in time by discriminatory treatment. *See Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Here, plaintiff pleads no direct facts supporting retaliatory animus, thus leaving him to rely on an inference of causation based on timing. *See Vega*, 801 F.3d 72 at 91.

The alleged adverse employment action occurred on March 10, 2014. PAC at ¶ 63. Plaintiff claims this was in retaliation for his: (1) internally complaining about the alleged discrimination, which he did in early 2011; (2) filing an EEOC complaint, which he did on March 1, 2012; and (3) filing this lawsuit, which he did on November 8, 2013. Generally, "[t]he passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged." *Williams v. City of New York*, 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012). *See Brown v. City of New York*, 622 Fed. Appx. 19, 20 (2d Cir. 2015) ("The time lapses between [plaintiff's] protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations."). Even the protected activity closest in time to JetBlue giving plaintiff a unsatisfactory mark was still four months prior to this alleged retaliatory act.

Accordingly, plaintiff does not state a viable retaliation claim under Title VII, NYSHRL, or NYCHRL, and any amendment would be futile.

## III. Conclusion

For the reasons set forth above, allowing plaintiff to amend his Complaint to add claims for pattern or practice discrimination, hostile work environment, and retaliation under Title VII, NYSHRL, and NYCHRL would be futile. Accordingly, plaintiff's motion for leave to amend is denied. The Clerk of Court is directed to close docket entry 40.

**SO ORDERED.**

/s/ Nina Gershon
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
September 16, 2016